UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re:

GENERAL MORTGAGE
CORPORATION OF AMERICA, INC.,

Case No.: 9:04-bk-16077-ALP
Chapter 7 Case

_____Debtor._____/
DIANE L. JENSEN, Chapter 7 Trustee,

Plaintiff,

v.

Adv. Proc. No. 9:06-ap-00312-ALP

WASHINGTON MUTUAL BANK, F.A.,

_____Defendant._____/

**MEMORANDUM OPINION
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Doc. Nos. 74 and 79)

**EVENTS PRECEDING THE MOTION FOR SUMMARY JUDGMENT**

Prior to filing its bankruptcy case under Chapter 11 of the Bankruptcy Code, General Mortgage Corporation of America, Inc. (the Debtor) was a Florida corporation with its principal place of business in Lee County, Florida. Linda Durkin and Agostino Reali (the Borrowers), as husband and wife, were the officers and directors of the Debtor within one year preceding the Debtor's Voluntary Petition date.

On January 3, 2003, the Borrowers, as husband and wife, entered into a mortgage agreement with the Debtor to borrow $300,000 (Mortgage Agreement). The Mortgage Agreement provided that the Borrowers, as husband and wife, owed the Debtor "Three Hundred Thousand and 00/100 Dollars ($300,000) plus interest." The Borrowers promised "to pay the debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1, 2033."

On the same date, the Debtor executed an Assignment of Mortgage (Assignment) to Washington Mutual Bank (the Defendant). The Assignment provided that the Debtor "FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to WASHINGTON MUTUAL BANK, FA ... certain Mortgage dated JANUARY 3, 2003 ... to GENERAL MORTGAGE CORPORATION OF AMERICA." Neither the Mortgage nor the Assignment dated January 3, 2003, were recorded in public records in and for Lee County, Florida.

Prior to the above mentioned Assignment, the Defendant and Banc of America Mortgage Capital Corporation (BOAMCC) on April 1, 2002 entered into a Mortgage Loan Purchase and Sale Agreement (Sale Agreement), whereby from and after April 1, 2002, BOAMCC would purchase certain Residential First Lien Mortgage Loans from the Defendant. On the same date, the Defendant and BOAMCC entered into a Servicing Agreement (Servicing

Agreement). The Preliminary Statement of the Servicing Agreement provided that the Defendant, pursuant to the Sale Agreement, would service the loans and mortgages purchased by BOAMCC from the date of the Servicing Agreement forward. Between January 3, 2003 and April 14, 2003, the Defendant assigned the Receivables to BOAMCC pursuant to the terms of the Sale Agreement.

On April 14, 2003, BOAMCC, Bank of America, N.A. (BOA) and the Defendant entered into an Assignment, Assumption and Recognition Agreement (BOA Agreement). In accordance with the Servicing Agreement, after the transfer of the Assignment and Mortgage pursuant to the BOA Agreement, the Defendant continued to act as the servicing agent and transferred the Assignment and related Mortgage to BOA. Based on the foregoing, the Receivable was now owned by BOA, with servicing to be provided by the Defendant. Based on the BOA Agreement, the Receivable was owned by BOA, with servicing to be performed by the Defendant. It is the Trustee's contention that the Defendant did not notify the Debtor that it was no longer the holder of the Assignment and related Mortgage.

Between August 29, 2003, and July 27, 2004, the Debtor made twelve (12) payments in the amount of $1,798.65 to the Defendant on account of the Mortgage and Assignment (Prepetition Payments). The total sum of the Prepetition Payments the Debtor made to the Defendant was $21,583.80. The Defendant's Mortgage Loan History Year to Date report reveals that the above-

mentioned payments were made by the Debtor to the Defendant on account of a debt owed not by the Debtor, but by the Debtor's principals, the Borrowers. The Defendant admits receiving eleven (11) Prepetition Payments in the amount of $19,102.03 and applying the same to the debt of the Borrowers. However, it is the Defendant's contention that the amount received was transferred to BOAMCC for the benefit of BOA pursuant to the terms of the Servicing Agreement and the Defendant retained approximately 3½% for each monthly payment remitted by the Debtor.

On August 11, 2004, the Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On August 12, 2004, one day following the Petition Date, the Debtor transferred to the Defendant the sum of $294,921.95 by way of wire transfer in final payment of the amount due on the Mortgage (Wire Transfer). The Defendant's Mortgage Loan Year to Date report also reveals that the Wire Transfer was made to the Defendant for the benefit of the Borrowers and not for a debt owed by the Debtor. The Defendant admits receiving and applying the funds received from the Debtor to the debt of the Borrowers and transferring the amount received to BOAMCC for the benefit of BOA. The Defendant further contends that it retained the sum of $83.58 as its servicing fee in connection with the Wire Transfer as per the Servicing Agreement between the Defendant, BOAMCC and BOA.

Basically, these are the relevant facts alleged by the Trustee in Count I of her Complaint. On or before August 1, 2004, one day after the commencement of the Chapter 11 case, the Debtor transferred the sum of $294,931.95 to the Defendant. According to the Trustee, the transfer was made without consideration to the estate, and in fact had been transferred to satisfy a mortgage executed by the principals of the Debtor, Linda Durkin and Agostino Reali on real estate owned by them individually in Cape Coral, Florida. The transfer was not authorized by the Bankruptcy Court. According to the Trustee, the transfer should be set aside pursuant to 11 U.S.C. §549 as a post-petition transfer. Therefore, the Trustee is entitled to a judgment in the amount of $294,931.95, together with interest from August 12, 2004, including costs.

Count II of the Trustee's Complaint is based on allegations that on August 26, 2003, September 29, 2003, October 28, 2003, November 24, 2003, December 29, 2003, January 30, 2004, February 23, 2004, March 29, 2004, April 20, 2004, May 24, 2004, June 18, 2004, and July 27, 2004, the Debtor transferred to the Defendant twelve (12) monthly payments in the amount of $1,798.65 totaling $21,583.80. These transfers are within in one year of the commencement of the Chapter 11 case filed on August 11, 2004. At the time these payments were made, the Debtor received no consideration for payments and received no equivalent value in exchange for the payment. Further, the Debtor was insolvent or became insolvent because of the consequence of the

transfer. According to the Trustee, these payments could be set aside as fraudulent transfers pursuant to 11. U.S.C 548(a)(1)(b) and Trustee is entitled to judgment against Defendant in the sum of $21,583.80 together with interest from time of the transfers and costs.

In her Complaint, the Trustee contends that there are no genuine issues of material facts and based on the undisputed facts stated in the Complaint, she is entitled to judgment in Count I and II as a matter of law to the extent of $315,774.00 in principal, $47,466.66 in interest, for a total of $363,241.24 along with interest from December 13, 2007.

In its Motion for Summary Judgment, the Defendant also contends that there are no genuine issues of material fact. Based on the pleadings and stipulations with regard to the undisputed facts and Affidavit of the Defendant, it is entitled to judgment as a matter of law based on the contention that the Defendant was not the initial transferee but merely a conduit because it did not control the funds sought to be avoided. The funds sought to be avoided were in fact controlled by BOA.

## ANALYSIS

It is not unusual and, as a matter of fact, it is quite common today in the mortgage lending business that the initial lender assigns its notes and mortgages to another entity but remains the servicing agent of the obligation. In the present instance, the original holder on the note, the Debtor, assigned the note and

mortgage to the Defendant. Thereafter, the Defendant assigned the note and mortgage to BOA. None of these transactions revealed the original obligor. The assignments were not recorded, so as far as the original obligor was concerned, he owed the obligation to the Defendant and not BOA. This Debtor has no contractual relationship with BOA, the only direct contractual relationship was with the Defendant. The payments actually received on the Borrower's note and mortgage was received by BOA and the Defendant only retained a 3.5% servicing charge on each payment.

Based on these facts, it would facially appear the initial transferee who could be held liable under 11 U.S.C. § 550 was the Defendant and not the ultimate recipient of the payments. As noted the transaction is not unusual, and courts have had the opportunity to resolve whether the originator of the loan was merely a conduit of payments received when it assigns the note and mortgage to another company and retains only a service fee.

Summary judgment is appropriate when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). The purpose of summary judgment is to determine if there are genuine issues for trial and for the moving party to demonstrate that it is entitled to judgment as a matter of law. *Banco Latino Int'l v. Lopez*, 95 F.Supp.2d 1327, 1332 (S.D. Fla. 2000); *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th

Cir. 1994). To defeat a motion for summary judgment, the non-moving party must do more than simply show that there is some doubt as to the fact of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Once the moving party has satisfied its burden of proof, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion. Moreover, the non-moving party must demonstrate that the moving party is not entitled to judgment as a matter of law *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

Pursuant to 11 U.S.C. § 549(b), a post-petition transfer of estate assets may be avoidable if the court has not authorized the transfer. However, avoidable transfers can only be recovered from certain transferees, such as those identified by 11 U.S.C. §550, which includes initial transferees. *Andreini v. Pony Express Delivery Servs. (In re Pony Express Delivery Servs., Inc.)*, 440 F.3d 1296, 1300 (11th Cir. 2006). An initial transferee exerts legal control over the assets, distinguishing it from a conduit who has no right to use the assets for its own purposes. *Id.*

While this Court acknowledges that the Prepetition Payments coupled with the Wire Transfer made to the Defendant on behalf of the Borrowers are avoidable transfers pursuant to 11 U.S.C. §§ 548 and 549, the determinative issue is whether the Defendant incurs liability under §550 as an initial

transferee or is merely a conduit. Based on the foregoing, this Court is satisfied that the Defendant was merely acting as a conduit to facilitate the transfer to BOA because it had no legal right to use the funds for its own purposes. Therefore, it is appropriate for this Court to determine that the Defendant is not liable pursuant to 11 U.S.C. §550 for the avoided transfers.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Plaintiff's Motion for Summary Judgment (Doc. No. 74) be, and the same is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that the Defendant's Motion for Summary Judgment (Doc. No. 79) be, and the same is hereby granted.

A separate Final Judgment shall be entered in accordance with the foregoing.

DONE at Tampa, Florida, on _____FEB 1 3 2008_____.

ALEXANDER L. PASKAY
United States Bankruptcy Judge